The next case today is United States v. Carlos Reyes, Appeal No. 19-2013. Attorney Feldman Rumpler, please introduce yourself for the record and proceed with your argument. Leslie Feldman Rumpler, Jr. Good morning. I may it please the court. Leslie Feldman Rumpler for Carlos Reyes, Jr. This appeal arises out of and focuses on the denial of a motion to suppress the fruits of a search and also an interrogation that occurred on a stop in Chestnut Hill July 18th in this case. There are really two issues that Mr. Reyes raises here in terms of clear error in the factual findings. The first is that he consented, the government's argument that he consented. And secondly, the court's finding that Trooper Lynch, the state trooper who stopped him, was effectively alone when he was dealing with Mr. Reyes during the stop. On consent, is your argument that he didn't consent or is your argument that it was a coerced consent? It's really that the court clearly erred in finding that he consented at all. Mr. Reyes submitted an affidavit saying that he never consented. I guess you could interpret that as he never consented voluntarily. But my argument here is that the circumstances to which Trooper Lynch testified are that he asked Mr. Reyes as he was interrogating him twice for his consent in the presence of no one. There were several ways that he could have recorded that consent or documented that consent. He did none of them. And then later, when two other state troopers arrived on the scene, he didn't confirm consent in their presence. So the court relied entirely on the testimony of Trooper Lynch to make the finding that Mr. Reyes consented. That's precisely what we have district court judges for, is they've got credibility issues. You've said he didn't document it, could have documented it, but he said I did it and the Yes, it's true that this court defers mostly for the most part to the district court when it makes factual findings, but it's not a complete deference. In other words, you can still look at his testimony and hear what you have. How is this clearly erroneous? It's clearly erroneous because the testimony of Trooper Lynch was so inconsistent and so not believable. If you simply look at his description of what he says he saw on Route 9, he claims that he saw Mr. Reyes tailgating and speeding when, in fact, another trooper was in front of him. He couldn't see anything. The other trooper said that Mr. Reyes was tailgating and speeding. But now you're talking about a different issue. Now you're talking about whether he had reasonable suspicion to pull him over to the side of the road. In fact, I'm talking about the credibility of the witness because he flipped and flopped so many times on this issue. Suppose he told 20 other lies, flat out whoppers, but then on this one he said, I asked him for consent and the judge looked him in the eyes, assessed his demeanor and said, I believe you on this one. We'd affirm, wouldn't we? Not in the circumstances of this case where there's nothing to confirm it and where it would have been so easy to do so. My argument is that it was clear error to rely solely on the testimony of a witness who was so lacking in credibility during his testimony at the evidentiary hearing. So you want us to put in place a rule that says there's got to be some corroborating evidence before a district court can believe a law officer? No, I'm not asking for a rule. Each case is unique on its own facts. But in this case, what you have is a record that shows there were three state troopers on scene. The district court's findings or the order that the district court wrote, which includes factual findings or factual conclusions, includes that the court believed this witness with no corroboration and also found that Trooper Lynch was effectively alone in dealing with Mr. Race. That finding is absolutely belied by the record and the findings fail to mention the presence of a third state trooper. It simply who came with the dog and he was clearing the car for the dog. He doesn't mention Trooper Mahoney, who was also on scene and who was available to assist. When you say on scene, what do you mean? Be more precise. He was there. In other words, he came to he was present with Trooper Lynch and Trooper McSweeney. But when he put him in handcuffs, the fellow wasn't there. Well, it's not entirely clear. Five minutes. It's not entirely clear because Trooper Lynch testified that Trooper Mahoney was present while Trooper McSweeney was clearing the car for his dog or was was clearing the car. But there was a turret tape that said that recorded that Trooper Mahoney and Trooper McSweeney arrived at the very same time. Here's the problem. The district court pretended that there was no Trooper Mahoney, simply didn't mention him like he wasn't there and said, therefore, Trooper Lynch was effectively alone because there was nobody there except for Trooper McSweeney, who was busy with the dog. Now, counsel, I understand your point, but when you survey all of our cases and this is recently summarized and the crews were there, uh, there have been many cases where involving, you know, more police officers on the scene. And yet we have not determined that that resulted in some sort of involuntary or coerced statement by the defendant. How do you address that? I mean, these are two more officers. This is not, you know, a large number of additional officers. It's fact specific. It depends how many other people are present and what the officers are doing. In Rabia, the case cited by the district court, there were two officers. There were three people that they had to deal with, so that the officer dealing with the driver of the car was unassisted by the other officer who was busy dealing with the other people who were on foot. That's different. Here we have three officers and one person, and it's just clearly error to say that the officer who was dealing with this person was effectively alone when there were these other, when there were other officers there. And in fact, again, Trooper Lynch testified that Trooper Mahoney just happened to come because he was in the area. I'm clear how he had that actually to the court, which came with a tarot tape and was offered and admitted at the suppression hearing. So is the effect, I'm confused about the effectively alone. Are you saying that finding goes to Trooper Lynch's credibility? Or are you saying that it goes to a coerced consent? It goes to the reasonableness of the measures taken, which include handcuffing Mr. Reyes and blocking his exit. So are you saying that he was under arrest? Effectively, yes. And therefore what? And therefore, therefore his questioning was involuntary. He didn't consent, and he didn't consent to the search. Again, Trooper Lynch said that his consent came earlier, but here you have two other officers on scene who could have witnessed a consent had there been one, and that did not happen. Now, did the consent happen twice? Is that right? Accordingly, allegedly the consent happened twice and both, both very close in time to each other at the very, very beginning of the stop when no one else was present. Um, I want to just address briefly the government's argument that should the court, um, agree at on the issue of consent, that there's a fallback justification for the search, which is probable cause. And I simply would point out that the evidence adduced at the evidentiary hearing really did not go into much detail at all about the drug investigation. It certainly didn't go into any detail about Mr. Race, except for the fact that he lived at the address. There was an investigation packages being sent, but in other words, there wasn't testimony about him previously actually receiving packages or taking them anywhere. It was very much in the background. And I think that is the reason why the district court made no findings on the issue of probable cause and rested its decision entirely on the issue of consent. If there are no other questions, I'll rest, um, except for rebuttal time. Thank you. Attorney Rampol, please mute your audio and video. Attorney Eisenstat, please unmute your audio and video. You may begin your argument. May it please the court, Karen Eisenstat for the government. So I'd like to start briefly with the issue of consent, um, which, uh, opposing counsel was just talking about. So as the court has noted, the issue, um, here is not whether it was voluntary. That was not, um, Mr. Ray's argument, uh, nor, uh, whether the scope, uh, covered the trunk. His argument on appeal is that Trooper Lynch is lying and that he did not, in fact, consent to any search. Um, there was no clear error in this credibility determination by the district court. Trooper Lynch's testimony was logically coherent. It was consistent with Trooper Pentezelos' testimony. The other trooper testified during, um, the hearing, and it was also consistent with the contemporaneous turret tape recording, um, which is the recording of the radio transmissions back and forth with the station. And of course, the district court here observed the trooper's responses and his demeanor, um, as the defense was pressing him on these exact same issues that they raised on appeal on cross-examination at the suppression hearing and found the trooper, um, credible. Why wouldn't his radio have picked up the giving of consent? I don't know. I don't think it's in the record precisely how that operates, but I think unless, um, you know, he's communicating directly with the barracks or the station, I don't think it's recording everything that's happening on the scene. So it's recording the transmissions, not just simply recording the actual stop. So according to Trooper Lynch's testimony, the fact that there was no recording of consent was just, you know, the effective standard procedure that normally he's not pulling out his iPhone and recording, um, you know, whether people consent, he doesn't generally do consent forms on scene, etc. Then the defense brings up this whole, uh, idea of these traffic, his testimony about the tailgating, that there's some fundamental inconsistency, but actually if you look at the record, um, there isn't any fundamental inconsistency. So they're, they're in a stack, uh, they're, uh, Trooper Lynch starts at the back of the stack because he's the one in the MARC cruiser. They don't want to tip off the guy that they're following him. And over the course of 30 minutes, as they follow him from Framingham to Route 9, he moves towards the front of the stack. Then, um, he's right behind Trooper Pantazellos when he hears of the radio from that trooper. I caught him tailgating. And then that trooper immediately moves out of the way because now they have the, what they were looking for, which was the trigger, uh, to have a valid traffic stop. So he immediately pulls into position. And, um, I think the defense's view is, you know, tailgating is an instantaneous thing. Only one person can see it, but that's not true based on common sense. If you're tailgating for a little period of time, two people could see it, obviously. So I just don't see the inconsistency that they're referring to. And finally, um, you know, logically, it doesn't make sense that he would search without consent. The whole point here was the wall-off stop. They don't want Mr. Reyes to have any indication that there is an ongoing investigation because there are search warrants to be executed the next day on co-conspirators. So it doesn't actually make sense that he would do the search without consent. Um, and if the court has other questions about the consent issue, I'm happy to answer them. But if not, I'll turn to the effectively alone finding that was the second factual challenge. Yeah, it just strikes me that it puts a suspect like this in an impossible position. It's always going to be that person's word against the troopers or the law enforcement officer's word when it can easily be remedied. I mean, that could potentially, you know, in certain circumstances, they could, you know, use a consent form, etc. But here, Mr. Reyes did not even choose to testify at the suppression hearing. I mean, he put in a self-serving affidavit. And then, you know, he didn't come in to even try to challenge that at the hearing and have the credibility battle. So I don't think in this position, he really can complain about that. So on the effectively alone piece, the defendant hasn't shown that that factual description of the situation is clearly erroneous. But he also hasn't shown that if it were erroneous, that would mean he was in custody for Miranda purposes, which is, of course, the question that matters in terms of the outcome he wants. He wants those statements suppressed. So in terms of the finding itself, McSweeney, as the district court found, he's focused on the dog. You can't, while you're holding that dog, jump right into a struggle that would make it worse. So that's his job is to deal with the dog. Trooper Mahoney, I think, as Judge Chiara pointed out, the record shows that he showed up after the search was underway. Reyes is already handcuffed at that point. Trooper Lynch already had to make his safety assessment with no idea that another trooper was about to enter the scene. And, you know, shifting positions at that time to try to carry out the search in some other way just would have unnecessarily prolonged the search. So things just continued the way that, they were already under, what was already underway just continued to carry it out efficiently. Five minutes. Then there's the officers that are watching from a distance, which opposing counsel mentioned in her brief. Those officers, in addition to Trooper Lynch testifying, you know, I couldn't see them, which means necessarily I can't be sure that they're there. Also, Trooper Pantazelos testified he was about 100 yards away, and he's apparently the closest one and the only one out of his car even watching. And that's a football field away with Hammond Pond Parkway and traffic sort of rushing in between. So that's too far to render immediate assistance if there was a security issue. So I think in this situation, whether the court agrees that this particular fact pattern warrants the label effectively alone that the court used in Rabia, or if it's a little bit of that either way, Trooper Lynch absolutely had legitimate safety concerns. He's dealing at close range with a man who has prior narcotics and firearms convictions, and also a prior conviction for assault and battery on a police officer. He's suspected of having drugs in his car. And as this court has noted in the past, the connection between drugs and violence is legendary. And also, Trooper Lynch testified Mr. Reyes was so nervous and jumpy that he made the trooper nervous. And they actually discussed that, like, why are you so nervous? And again, as I mentioned, you know, whether he's effectively alone or not, like, it's not the full Miranda analysis. So I'd like to just quickly point to six other factors that also show that Mr. Reyes was not in custody for Miranda purposes when he's making those statements regarding the Girl Scout cookie oven in his trunk. So first, the context of the entire encounter here is that Mr. Reyes consented to the search of his car. Assuming, of course, the court upholds the finding that he did in fact consent to that search, then that's, you know, established for purposes of appeal. So what he perceives Mr. Reyes is happening, which is relevant to the Miranda coercion analysis, is that there is a traffic stop, and I agreed to a search, and they are now conducting that search that I agreed to. And when you agree to a search, I mean, it's understood it will take some period of time, and that during that time, you're not going anywhere because the police are searching your car. Number two, consistent with that, then Trooper Lynch explains when he's handcuffing the defendant, you are not under arrest. We're doing that search that, you know, you just agreed to, and this is just for safety reasons. I'm cuffing you for safety. That is both objectively reasonable, I think, from Trooper Lynch's perspective, but it's also reasonable from the defendant's perspective as he's hearing it. It's like, okay, yeah, I get it. There's a dog in the mix. You're doing this search. I know I have prior drug and firearms convictions. We were just talking about my criminal history. I know I'm very nervous. I know you're nervous because I'm nervous. So that's the situation. Number four, let me ask you, isn't Rodriguez clear that if you stop on a traffic violation, you just have to do the traffic violation stuff unless something else comes up. You can't extend it to do something else. That is absolutely correct. So can you, can you, under Rodriguez, can you ask for consent to do the something else? That seems to be you're about, you know, asking for consent and whether that could just be something you do routinely. But I don't think it's something the court needs to decide in this case, because here, as the court discussed in Cruz Rivera, if you have reasonable suspicion under Rodriguez, then you can continue to do things to dispel your reasonable suspicion. And here, even though Trooper Lynch chose to conduct this as a by-the-books wall-off traffic stop because he didn't want to blow the investigation, that doesn't mean that he didn't know what he knew going into the stop, just like the Trooper and Cruz Rivera. Briefly, what did he know in terms that would give him reasonable suspicion of a drug offense? There's the prior parcels that had gone to Carlos Reyes. There's his pattern of meeting with Mr. Santiago Cruz right after those parcels show up at his house. There's the fact that this particular parcel that was delivered this day had been alerted to by a narcotics dog before it was even delivered. So that's at the station. There's what he had been hearing over the radio all day from the surveillance officers that were watching the Reyes house. So the package just delivered. Some hours later, they don't see it leave the house. Some hours later, Mr. Reyes comes home, goes in the house. A few minutes later, he comes out with what looks like exactly the same parcel that just was delivered. Then he goes behind the building and then immediately drives off. So that's all information that was conveyed to Trooper Lynch listening. If the court, if I may just finish responding to that question. Yes. And then finally, you know, there's what gives coherence to what he's observing during that. All of those facts give coherence to what he's observing himself during the stop. The defendant being unusually nervous, his inability or unwillingness to specify where he is going. And finally, he has a USPS mailing label in his hand, which given all the facts that Trooper Lynch knew about the investigation is very significant. Thank you. Thank you. That concludes our argument in this case, Your Honor. Attorney Fellman and Rumpler and Attorney Eisenstat should disconnect from the hearing at this time.